IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| EDIALBERTO NAVA,<br>JOEL NAVA | ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| vs. | ) <br> ) | Case No.3:12-cv-02503-MHH |
| ORNELAS MEXICAN<br>RESTAURANT, INC. d/b/a,<br>CASA MEXICANA, a corporation.<br>DANIEL ORNELAS,<br>JOSE, ORNELAS,<br>FAVIO HERNANDEZ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION**

This opinion concerns a proposed FLSA settlement. In their complaint, plaintiffs Edialberto Nava and Joel Nava contend that defendant Ornelas Mexican Restaurant, Inc. d/b/a/ Casa Mexicana and the individual defendants violated provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. The parties have agreed to settle the plaintiffs' FLSA claims, and they have asked the Court to review the proposed settlement. (Doc. 19). For the reasons stated below, the Court approves the settlement because it is a fair and reasonable compromise of a

bona fide dispute.[1]

**Background**

Edialberto Nava and Joel Nava filed this lawsuit on July 19, 2012. (Doc. 1). In their second amended complaint, they assert that their former employer, Casa Mexicana, "is a restaurant serving its product to individuals in Lauderdale County, Alabama, utilizing goods which travel in interstate commerce." (Doc. 16, ¶ 17). The individual defendants purportedly either own or manage the restaurant. (Doc. 16, ¶¶ 9-12).

According to the complaint, over the course of several months, the plaintiffs worked as "servers" or "waiters" at the Casa Mexicana restaurants at issue. (Doc. 16, ¶¶ 3-5). The plaintiffs contend that they were required "to work an average of seventy (70) to eighty (80) hours per week;" however, they have no record of the hours that they worked because the defendants purportedly "did not provide Plaintiffs with an opportunity or a means by which to clock-in or clock-out before or after work so that their hours worked could be tracked or accurately recorded." (Doc. 1, ¶¶ 21-22). Similarly, the defendants allegedly "did not have a system in place to track or record Plaintiffs' tips to ensure that the Plaintiffs were making at least minimum wage for hours worked up to forty (40) hours and time and one half

---

[1] The parties have consented to dispositive jurisdiction by a United States Magistrate Judge. (Doc. 24).

for hours worked in excess of forty (40) hours." (Doc. 1, ¶29).

The plaintiffs contend that the defendants violated the FLSA's minimum wage provisions. Namely, the plaintiffs allege that the defendants "failed to compensate the Plaintiffs at the federally mandated minimum wage rate of $7.25 in accordance with 29 U.S.C. § 207 for each hour worked up to forty (40) in each work week." (Doc. 16, ¶ 34). In addition, the plaintiffs assert that the defendants, "have failed to compensate the Plaintiffs at the overtime rate required by 29 U.S.C. § 207 for each hour worked above forty (40) in each work week." (Doc. 16, ¶39). As compensation for the defendants' purported willful violation of the FLSA, the plaintiffs seek unpaid wages, liquidated damages, attorney fees and costs. (Doc. 1, pp. 6-7).

The defendants deny that the plaintiffs are entitled to relief under the FLSA. (Doc. 18). The defendants also raise a number of affirmative defenses to the amended complaint. (*Id.*).

Shortly after the defendants answered the second amended complaint, the parties filed a joint motion to approve the settlement agreements that they negotiated. (Doc. 19). The parties have represented to the Court that they believe that the agreements reflect a fair and reasonable compromise of their dispute. (Doc. 19, p. 3).

In exchange for dismissal of the claims against them with prejudice, the

defendants have agreed to settle Joel Nava's FLSA claim for $3,600. Similarly, the defendants have agreed to settle Edialberto Nava's FLSA claim for $3,085. The defendants also will remit $2,000 in attorney fees. The parties assert that these settlement payments represent a compromise of a bona fide dispute. The plaintiffs contend that they worked a maximum of 160 hours during each two week pay period. Edialberto Nava asserts that the defendants owe him just over $7,600 in unpaid overtime; Joel Nava submits that the defendants owe him slightly less than $2,000.00 in unpaid minimum wages and approximately $6,220 in overtime wages. Based on their analysis of the information available to them, the defendants concluded that neither plaintiff worked more than 40 hours each week. The defendants concede that they have no overtime records to substantiate their position; however, if the case were to proceed to trial, some of the restaurants' long-time employees would testify that neither plaintiff worked more than 40 hours per week. The witnesses also would state that the plaintiffs occasionally were relieved from their duties as servers so that they could paint or weld for the defendants.[2]

With respect to attorney fees, the record indicates that plaintiff's counsel devoted just under 18 hours to this case at an average rate of pay of $150 per hour.

---

[2] Counsel for the parties explained the nature of the bona fide dispute during a hearing. A transcript of the hearing is available.

Plaintiffs' counsel also has paid certain litigation expenses on behalf of the plaintiffs.

On this record, the Court considers the parties' motion to approve the proposed settlement of the plaintiffs' FLSA claims.

## Discussion

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.' Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a). Congress designed the FLSA "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). In doing so, Congress sought to protect, "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, the employer

must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs.  29 U.S.C. § 216(b).  "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945).  "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputedly owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.  To compromise a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353*; see also Hogan*, 821 F. Supp. 2d at 1281-82.[3]  "[T]he parties requesting

---

[3] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and

review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement. *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

Based on the Court's review of the proposed settlement agreements and the information that the parties submitted, the Court finds that there is a bona fide dispute in this matter that supports the parties' proposed settlement. The plaintiffs contend that they can prove that the defendants owe them more than $15,000 in unpaid wages; the defendants disagree. The defendants assert that the plaintiffs did not work more than 40 hours per week. The settlement proceeds represent a

---

for liquidated damages, provided the employer pays in full the back wages. The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d at 1352-53 (footnotes omitted).

fair and reasonable compromise based on the parties' conflicting evidence regarding unpaid wages. The factual dispute in this matter is real, and reasonable jurors, if they accepted the plaintiffs' testimony, could award actual damages in excess of $15,000. Through this settlement, the plaintiffs will recover approximately half of their disputed wages. That is a fair and reasonable result under the circumstances of this case.

The Court finds that there also is adequate support for a $2,000 attorney fee based upon plaintiff's counsel's investment of nearly 18 hours in this matter at an hourly rate of $150.00. The number of hours that plaintiff's counsel devoted to the case is reasonable, given the work performed through the negotiation of the settlement, as is the hourly rate which serves as the basis for the compromise fee. *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

The settlement also is fair and reasonable because it allows the parties to avoid the expense of trial, and it enables the plaintiffs to recover alleged unpaid wages sooner rather than later (following a trial and potential post-trial and appeal proceedings).[4]

---

[4] The Court approves the final settlement agreements that the parties submitted to the Court. The Court was not willing to approve the original agreements that the parties provided to the Court because they contained provisions that generally are not appropriate in FLSA settlement agreements. For

**Conclusion**

For the reasons stated, the Court approves the parties' proposed settlement of the plaintiffs' FLSA claims. The Court concludes that there is a bona fide dispute and that the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute. The Court will enter a separate order dismissing this action with prejudice. The Court will retain jurisdiction for the limited purpose of addressing any question that may arise with respect to the administration of the settlement agreements. The Clerk is directed to please

---

example, the settlement agreements initially contained confidentiality provisions. "[C]onfidentiality clauses and pervasive release provisions generally render a FLSA settlement agreement unfair and unreasonable." *Vinson v. Critter Control, Inc.*, 2012 WL 6737508, at *2 (S.D. Ala. Dec. 28, 2012); *Hogan*, 821 F. Supp. 2d at 1282 (same). Confidentiality provisions in FLSA settlements are particularly problematic because they "have the potential to hinder unfairly the congressional goal of universal compliance with the FLSA," thereby affecting both the private and public interests that the FLSA protects. *Id.*; *see also Stalnaker*, 293 F. Supp. 2d at 1264 ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'") (quoting *Brooklyn Savings Bank*, 324 U.S. at 706); *Dees*, 706 F. Supp. 2d at 1242 ("a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute."). The Court recognizes that there may be instances in which confidentiality provisions and other pervasive release provisions may be appropriate, but those instances are rare, and the parties must provide compelling reasons for the Court to approve an agreement containing such provisions. *Stalnaker*, 293 F. Supp. 2d at 1264; *Crabtree v. Volkert, Inc.*, 2012 WL 6093802 (S.D. Ala. Dec. 7, 2012).

TERM Doc. 19.

DONE this 22nd day of May, 2013.

_____
MADELINE HUGHES HAIKALA
U.S. MAGISTRATE JUDGE